**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Fred Stevens
Christopher Reilly

*General Counsel to Plaintiff Gregory M. Messer,*
  *Chapter 7 Trustee of John Vincent Bivona*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :
                                                               :    Chapter 7
JOHN VINCENT BIVONA,                                           :
                                                               :    Case No. 16-12961 (SCC)
                                       Debtor.                 :
---------------------------------------------------------------x
GREGORY M. MESSER, as Chapter 7 Trustee of                     :
the Estate of John Vincent Bivona,                             :
                                                               :
                                       Plaintiff,              :
                                                               :
        -against-                                               :    Adv. Pro. No. 18-_____
                                                               :
ALEXANDER CAPITAL WEALTH                                       :
MANAGEMENT LLC, NESA MANAGEMENT                                :
LLC, EXITUS LLC, JOSEPH FIGLIOLO,                              :
JOSEPH AMATO, AND ROCCO                                        :
GUIDICIPIETRO,                                                 :
                                                               :
                                       Defendant(s).           :
---------------------------------------------------------------x

**TRUSTEE'S COMPLAINT SEEKING: (I) AVOIDANCE OF**
**FRAUDULENT TRANSFERS; AND (II) RELATED RELIEF**

Gregory M. Messer, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the estate of John

Vincent Bivona, the above-captioned debtor (the "Debtor"), by his counsel Klestadt Winters

Jureller Southard & Stevens, LLP, as and for his complaint (the "Complaint") herein against

Alexander Capital Wealth Management LLC ("Alexander Capital"), NESA Management LLC ("Nesa Management"), Exitus LLC ("Exitus"), Joseph Figliolo ("Figliolo"), Joseph Amato ("Amato") and Rocco Guidicipietro ("Guidicipietro" and collectively, the "Defendants") alleges as follows:

## PRELIMINARY STATEMENT

The Debtor is a retired attorney who has been involved in the creation and management of various investment funds formed for the primary purpose of investing in pre-IPO, non-public companies. Most, if not all, of the investment funds that the Debtor created, managed or was otherwise involved in, are besieged by litigation from alleged fraud victims and the Securities and Exchange Commission which collectively claim, in sum and substance, that the Debtor and his associates committed various frauds, perpetrated a Ponzi scheme, and committed numerous violations of securities and other laws. For the last year, the Debtor claims that if called to testify he will refuse to do so pursuant to his rights granted under the Fifth Amendment of the United States Constitution.

Leading up to the instant bankruptcy filing, the Debtor improperly used his attorney escrow accounts to take in and disburse personal funds for the intended purpose of hindering, delaying or defrauding legitimate creditors. Among many other transfers, in or around February 2014, the Debtor transferred $200,000 to or for the benefit of the Defendants.

The purpose of this action is to recover what rightfully belongs to the Debtor's bankruptcy estate so that it can be distributed to the Debtor's many creditors.

## INTRODUCTION

1.  On October 21, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On or around October 24, 2016, Gregory M. Messer was appointed interim trustee of the Debtor's estate.

3. On November 18, 2016, the Trustee presided over the first meeting of creditors in the Debtor's case and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## BASIS FOR RELIEF

4. This adversary proceeding (the "Adversary Proceeding") is brought pursuant to sections 544 and 550 of the Bankruptcy Code, and N.Y. Debtor and Creditor Law §§ 273, 274, 275 and 276.

## PARTIES

5. The Trustee is a member of the panel of private chapter 7 bankruptcy trustees in this district established by the United States Trustee pursuant to 28 U.S.C. § 586(a)(1). The Trustee is the duly appointed permanent chapter 7 trustee of the Debtor's estate and is empowered to bring this action. The Trustee maintains an office for the conduct of business at 26 Court Street, #2400, Brooklyn, New York 11242.

6. The Debtor is an individual with a principal place of residence at 200 Park Avenue, Suite 1700, New York, New York 10166.

7. Alexander Capital is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 17 State Street, 5th Floor, New York, New York 10004.

8. Nesa Management is a limited liability company organized and existing under the laws of the State of New York with its principal place of business located at 17 State Street, 5th Floor, New York, New York 10004.

3

9. Exitus is a limited liability company organized and existing under the laws of the State of Delaware with its registered agent located at 40 Wall Street, 17th Floor, New York, New York 10005

10. Figliolo is an individual with a place of residence at 80 Gold Street, New York, New York 10038.

11. Amato is an individual with a place of residence at 586 Marcy Avenue, Staten Island, New York 10309.

12. Guidicipietro is an individual with a place of residence at 132 Sharrotts Rd, Staten Island, NY 10309.

## JURISDICTION AND VENUE

13. This Adversary Proceeding relates to the bankruptcy case of *In re John Vincent Bivona,* Debtor, Case No. 16-12961 (Bankr. S.D.N.Y. Oct. 21, 2016) (the "Bankruptcy Case"), which is pending under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York before the Honorable Shelley C. Chapman (the or this "Court" or "Bankruptcy Court").

14. This Court has jurisdiction over the adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334.

15. Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court with respect to all matters and claims raised by this Complaint.

16. Venue of this proceeding and this application is proper pursuant to 28 U.S.C. §§ 1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

**FACTS COMMON TO ALL CAUSES OF ACTION**

I.     **The SEC Action Against the Debtor and His Various Funds**

17.    On October 11, 2016, the United States District Court for the Northern District of California entered a stipulated order appointing Sherwood Partners Inc. as SEC Receiver of certain entities affiliated with the Debtor, including Saddle River Advisors, LLC ("Saddle River") and SRA Management Associates, LLC ("SRA Management").  See SEC v. John V. Bivona, et al., Case No. 16-cv-1368 (N.D.C.A. Mar. 22, 2016), Complaint (the "SEC Complaint"), Docket No. 1 (the "SEC Action"), Docket No. 142.

18.    In the SEC Action, the SEC claimed that the Debtor used investor money as a "personal slush fund," funneling millions of dollars to fulfill his promises to earlier investors, and diverting $5.7 million to himself and other family members to pay for expenses including taxes, credit card bills, and a mortgage for a vacation home on the Jersey Shore.  See SEC Complaint p. 1.

19.    The SEC further alleged that the Debtor sent the "lion's share" of misappropriated funds to his nephew, Frank Mazzola, who in March 2014 accepted a fine and industry ban to settle an SEC fraud case involving the now-defunct Felix Investments which the Debtor controlled.  See Reuters, *SEC Charges Man With Ponzi-Like Tech Company Fraud*, FORTUNE (Mar. 22, 2016, 5:48 PM), http://fortune.com/2016/03/22/sec-tech-ponzi-fraud/ (quoting SEC Complaint).

20.    Further allegations made by the SEC suggest that since at least October 2013, the Debtor had orchestrated a Ponzi-like scheme through various funds including Saddle River, SRA Management, SRA I LLC ("SRA I"), SRA II LLC ("SRA II"), SRA III LLC ("SRA III" and collectively the "SRA Funds"),  NYPA I Fund LLC ("NYPA I"), NYPA II Fund LLC ("NYPA II"), NYPA III Fund LLC ("NYPA III") and NYPA Management LLC ("NYPA Management",

and collectively, the "NYPA Entities"), Felix Multi-Opportunity Fund I LLC ("FMOF I LLC"), Felix Multi-Opportunity Fund II LLC ("FMOLF II"), FMOF Management Associates LLC ("FMOF Management", and collectively, the "FMOF Entities" and combined with SRA Funds, NYPA Entities and Clear Sailing, the "Debtor Managed Entities"). See SEC Complaint p. 1-5.

21. The SEC alleged that the Debtor through the Debtor Managed Entities commingled investor money to cover shortfalls and diverted cash to the Debtor and related parties.

22. On or around December 22, 2017, the Debtor, his wife, Anne Bivona, Frank Mazzola and Michele Mazzola, all consented to the entry of a judgment in favor of the SEC and against the Debtor and Frank Mazola making them jointly and severally liable for the disgorgement of $4,655,000, representing profits gained as a result of the conduct alleged in the SEC Complaint. Anne Bivona stipulated to be jointly and severally liable with the Debtor for $500,000 of the judgment granted to the SEC. Michele Mazzola stipulated to be jointly and severally liable with the Debtor and Frank for $1,800,000. See SEC Action, Docket Nos. 285, 286, 294 and 295.

23. The SEC Action is still ongoing at the time of the filing of this Complaint.

**II.    The Debtor's Bankruptcy Case**

24. On October 21, 2016, ten days after the SEC appointed a receiver in the Saddle River cases, the Debtor commenced this bankruptcy case and filed his original bankruptcy schedules and statement of financial affairs [Docket No 1]. The Debtor's bankruptcy schedules are referred to herein as the "Schedules," and his statement of financial affairs and any amendments thereto is referred to as the "SoFA."

25. On November 11, 2016, the Trustee filed his application for authority to retain the undersigned counsel as his attorneys in the case. In that application, the Trustee identified a number of potential discrepancies in the Schedules and SoFA. For example, the Trustee asserted

6

that the Schedules failed to identify any interest in any financial accounts at TD Bank.

26. Five days later on November 16, 2016, the Debtor filed amended Schedules and an amended SoFA wherein he disclosed the accounts identified by the Trustee and claimed that a majority of the funds are held in trust for certain third parties [Docket No. 7].

27. On November 18, 2016, the Debtor appeared and testified at the first meeting of creditors held pursuant to section 341(a) of the Bankruptcy Code (the "341 Meeting"). At the 341 Meeting, the Debtor testified, among other things, that he (i) is suffering from some form of retrograde amnesia that prevents him from recalling certain memories; (ii) transferred in excess of a million of dollar to his nephew, Frank Gregory Mazzola and his nephew's wife, Michele J. Mazzola; and (iii) has virtually no assets, while his wife, Anne Bivona, has an estimated net worth of between $2 and $3 million.

28. On November 30, 2017, the Trustee filed an *Application For An Order Pursuant To Fed. R. Bankr. P. 2004 Authorizing Him To Examine (I) The Debtor, (II) Anne Bivona, (III) Frank Gregory Mazzola And His Spouse, and (IV) Any Financial Institution With Respect To Accounts Owned Or Controlled By The Debtor, Or In Which The Debtor Is Believed To Have Some Direct Or Indirect Interest* [Docket No. 11] (the "2004 Application").

29. On January 3, 2017, the Court entered an order (the "Order") approving the 2004 Application [Docket No. 41]. Upon entry of the Order, Trustee's counsel served a subpoena on the Debtor requesting, among other things, copies of documents and bank statements that could provide insight into the Debtor's financial situation (the "Document Demands").

30. The Debtor provided a production of documents in connection with the Trustee's Document Demands (the "Debtor Production"), however, Debtor's counsel informed the Trustee that if a deposition of the Debtor were to take place, the Debtor would refuse to testify pursuant to

7

his Fifth Amendment right under the United States Constitution.

31.     While he will not testify, the Debtor has cooperated informally and has met with the Trustee and counsel. However, even informally, the Debtor claims not to remember with specificity much about his financial affairs.

### III.    The Debtor's Attorney Escrow Accounts

32.     Additionally, the Debtor used numerous attorney escrow accounts, including First Republic Acct. ***5147, First Republic Acct. *** 2679, First Republic Acct. *** 8605, Valley Nat'l Acct. ***0179, Valley Nat'l Acct. ***0411, Valley Nat'l Acct. ***0187, and TD Bank Acct *** 6785, City Nat'l Acct. *** 2551, and TD Bank Acct *** 6793 (collectively, the "<u>Attorney Escrow Accounts</u>"), in order to keep funds outside the reach of creditors.

33.     The Debtor's use of the Attorney Escrow Accounts was entirely improper in at least the following ways:

  a. The Debtor commingled his own personal funds with any other funds that were in the Attorney Escrow Accounts (violation of Disciplinary Rule ("<u>DR</u>") 9-102(a) (22 NYCRR 1200.46));

  b. The Debtor used his Attorney Escrow Accounts to pay personal debts (violation of DR 9-102(a));

  c. The Debtor used the Attorney Escrow Accounts to shelter his funds and the funds of the Debtor Managed Entities from creditors;

  d. The Debtor did not have written agreements that dictated the use of funds deposited into the Attorney Escrow Accounts;

  e. The Debtor did not identify the owner of funds deposited into or withdrawn from the Attorney Escrow Accounts (violation of DR 9-102(c)(2) and (3), and (d)(1));

8

    f. The Debtor did not prepare or maintain any accounting of the funds deposited into or withdrawn from the Attorney Escrow Accounts (violation of DR 9-102(c)(3) and (d));

    g. In almost every instance where funds were deposited into the Attorney Escrow Accounts, the Debtor never provided notice to any party of the receipt of funds into the Attorney Escrow Accounts (violation of DR 9-102(c)(1));

    h. The Debtor did not clearly match deposits into the Attorney Escrow Accounts with corresponding withdrawals from the account (violation of DR 9-102(c)(3) and (d)); and

    i. The Debtor never obtained any permissions from any party for withdrawals from the Attorney Escrow Accounts, to the extent the funds did not belong to him.

34. The Debtor exercised complete ownership, dominion and control over all funds deposited into and withdrawn from the Attorney Escrow Accounts.

## IV. Facts Specific to the Instant Case

35. Upon information and belief, in or around January 2014, Alexander Capital's equity was owned seventy-five percent (75%) by Exitus and twenty-five percent (25%) by Amato and Guidicipietro.

36. Upon information and belief, in or around January 2014, Exitus's equity was owned by Figliolo, the Debtor's brother-in-law.

37. In or around February 2014, the Debtor was the majority owner of Felix Investments LLC ("Felix"), a licensed broker-dealer. He was also an executive vice president of Felix.

38. On or around February of 2014, the Debtor was approached by both Amato and Guidicipietro, regarding the possibility of giving them a loan of $200,000. The loan was to be used as a security deposit to be given to Alexander Capital's landlord at 17 State Street, New York,

9

New York. Alexander Capital was in the process of expanding its business and the loan would help it obtain new space.

39. Upon the request of Guidicipietro and Amato, the Debtor was to fund the loan via wire payment to Nesa Management, a company owned in equal percentages by Amato and Guidicipietro.

40. On February 27, 2014, the Debtor transferred $200,000 to Nesa Management by wire transfer (the "Transfer").

41. Nesa Management then provided the funds subject to the Transfer to Alexander Capital's landlord.

42. Upon information and belief, in or around July 2014, Nesa Management purchased Figliolo's shares in Exitus and through Exitus, Nesa Management obtained the owner of Alexander Capital.

43. The Debtor did not receive any consideration for the Transfer.

44. On July 19, 2016, the Debtor sent a letter to Amato and Guidicipietro demanding repayment of the Transfer. Nobody responded to the demand.

### FIRST CAUSE OF ACTION
**Constructive Fraudulent Conveyances –
11 U.S.C. §§ 544(a) and (b) and 550,
and N.Y. Debtor and Creditor Law §§ 273-275
(Against Alexander Capital, Nesa Management, Exitus, Figliolo,
Amato and Guidicipietro)**

45. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 44 of this Complaint as if fully set forth at length herein.

46. The Debtor had an interest in the funds and property transferred by the Transfer.

47. Each of the Defendants received or benefited from the Transfer.

48. The Transfer was made by the Debtor within six (6) years of the Petition Date.

10

49. The Debtor did not receive fair consideration or reasonably equivalent value in exchange for the Transfer.

50. There are creditors that hold unsecured claims against the Debtor allowable under section 502 of the Bankruptcy Code, that were creditors at the time the Debtor made the Transfer.

51. At the time the Transfer was made, the Debtor was: (i) insolvent or became insolvent as a result of making such Transfer; and/or (ii) engaged or was about to engage in a business or transaction for which the property remaining in his hands was an unreasonably small capital; and/or (iii) intended or believed that he would incur debts beyond its ability to pay as they matured.

52. Based upon the foregoing, the Trustee is entitled to a judgment against the Defendants avoiding the Transfer received by such Defendants as a fraudulent conveyance and directing the Defendants to return the Transfer or the value thereof to the Trustee together with interest thereon.

**SECOND CAUSE OF ACTION**
**Intentional Fraudulent Conveyances –**
**11 U.S.C. §§ 544(a) and (b) and 550,**
**and N.Y. Debtor and Creditor Law § 276**
**(Against Alexander Capital, Nesa Management, Exitus, Figliolo,**
**Amato and Guidicipietro)**

53. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 52 of this Complaint as if fully set forth at length herein.

54. The Debtor had an interest in the funds and property transferred by the Transfer.

55. Each of the Defendants received or benefited from the Transfer.

56. The Transfer was made by the Debtor within six (6) years of the Petition Date.

57. At the time each of the Transfer was made, the Debtor was engaged in fraudulent conduct, including the solicitation of investments from individuals on fraudulent pretenses, and

other schemes including the fraudulent purchase and sale of shares of non-public companies.

58. As alleged by the SEC, the Debtor used investor money like a "personal slush fund", funneling millions of dollars to fulfill his promises to earlier investors, and diverting $5.7 million to himself and other family members to pay for expenses including taxes, credit card bills, and a mortgage for a vacation home on the Jersey Shore.[1]

59. The Debtor managed the Debtor Managed Entities like a Ponzi scheme, transferring funds in and out of each in order to cover shortfalls.

60. The Debtor misused his Attorney Escrow Accounts in violation of numerous Disciplinary Rules in order to hide his personal funds and shield them from the reach of creditors.

61. The Debtor made the Transfer with actual intent to hinder, delay or defraud existing and future creditors.

62. There are creditors that hold unsecured claims against the Debtor allowable under section 502 of the Bankruptcy Code, that were creditors at the time the Debtor made the Transfer.

63. Based upon the foregoing, the Trustee is entitled to a judgment against Defendants avoiding the Transfer as a fraudulent conveyance and directing the Defendants to return the Transfer or the value thereof to the Trustee together with interest thereon.

---

[1] See Reuters, *SEC Charges Man With Ponzi-Like Tech Company Fraud*, FORTUNE (Mar. 22, 2016, 5:48 PM), http://fortune.com/2016/03/22/sec-tech-ponzi-fraud/ (quoting SEC Complaint).

**WHEREFORE**, Trustee respectfully requests that a judgment or judgments be entered against the Defendants as follows:

a) Avoiding and directing the return of the Transfer as a fraudulent transfer together with interest thereon;

b) granting such other and further relief as this Court deems just.

Dated: New York, New York
October 18, 2018

                              **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By: */s/ Fred Stevens*
     Fred Stevens
     Christopher J. Reilly
     200 W 41st Street, 17th Floor
     New York, New York 10036
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: fstevens@klestadt.com
             creilly@klestadt.com

*Counsel to Plaintiff Gregory M. Messer,
Chapter 7 Trustee*